## THE E. T. DOUGLASS.
## THE ESTHER K. NICHOLS.
## THE COMMANDER.
### No. 10553.

District Court, E. D. New York.
March 7, 1930.

Foley & Martin, of New York City, for libelant.

Alexander, Ash & Jones, of New York City, for claimant of the Esther K. Nichols.

William F. Purdy, of New York City, for claimant of the Commander.

BYERS, District Judge.

On January 5, 1926, at about 11:30 a. m., the libelant's coal boat E. T. Douglass was in collision, in Newtown creek, in this district, with the cattle float El Paso, and it becomes necessary to fix the blame for that occurrence.

The E. T. Douglass was the second vessel in a two-boat tandem tow, to the tug Esther K. Nichols, which was proceeding toward the mouth of Newtown creek, i. e., in a westerly direction; both the vessels in tow were light; there were two hawsers from the tug, which was separated from the first barge by a distance of 20 feet, measured from the stern of the Esther K. Nichols to the bow of the first barge; the barges, themselves, were close coupled; each was about 70 feet long, so that the bow of the E. T. Douglass was about 90 to 95 feet from the stern of the Esther K. Nichols.

The cattle float El Paso was in tow of the tug Commander, that is, the former was alongside the tug, on the starboard side of the latter. The Commander is about 85 feet by 20, and the El Paso is 180 by 32. The exhibits indicate that the float projected forward about the length of Commander on the starboard bow of the latter, in the tow formation. The latter were proceeding upstream, and had nearly reached the Vernon Avenue lift bridge, when further progress was halted because the bridge had to be opened.

The tug Esther K. Nichols has filed an answer alleging that the fault for the collision lies with the Commander, and the latter has done likewise with regard to the Nichols, so that the libelant rested upon a concession of damage, and the issue to be decided is which tug is to be called upon to respond to the libelant.

The evidence establishes that the Commander was favoring the starboard side of the center of the creek as the bridge was about to be reached, on a flood tide, and with a light southerly wind, the effect of which would be felt on the starboard side of the El Paso; the Commander blew three blasts for the bridge to lift, and had to wait for response to that signal, and therefore stopped; this pause in progress gave the wind a chance to force the tow over to the Long Island City bank of the creek, and that tendency was aided by the set of the flood tide to the same bank, by reason of the bend in the Newtown Creek to the east, which is fairly pronounced both below and above the bridge, according to the Sanborn Map in evidence.

The veering to its own port by the tow is clearly shown by the testimony of the captain and the mate of the tug Benson, which followed the Commander at a distance of about 25 feet.

That disinterested testimony places the port bow of the El Paso against and resting upon the Long Island City abutment of the Vernon Avenue bridge, at the starting of the lifting operation of the bridge; the float extended somewhat out into the creek. When the Esther K. Nichols was seen approaching on her way out of the creek, the master of the Commander says she was from 500 to 600 feet away; the master of the Esther K. Nichols says he was about 1,000 feet above the bridge when he saw the Commander; the latter blew two blasts, and the Esther K. Nichols responded with two, thereby accepting a starboard to starboard passing. Incidentally, it is to be clearly seen that such was the only feasible passing under the conditions shown.

At the time of giving her two-whistle signal, the Esther K. Nichols was near the center of the creek, but closer to the Long Island City than to the Brooklyn bank, or shore.

There can be no question but that the Esther K. Nichols, at some point of time after answering the two-whistle signal, and under a starboard wheel, started toward the Brooklyn side of the creek.

It is also clear that, if this maneuver had been undertaken soon enough, the barges in tow would have completed their swing to starboard, which was the result of (a) the turn of the Esther K. Nichols to port, (b) the set of the tide toward the Long Island bank of the creek, and (c) such force as the southerly wind exerted almost directly against the port sides of the barges, and straightened out soon enough to avoid the collision which took place. As it was, the E. T. Douglass, the second barge, struck the float El Paso, the position of which has been described, and the former, being light, suffered the damage in question. Specifically, the starboard corner of the E. T. Douglass, forward, struck the float on its starboard side, a little aft amidships, as the captain of the Esther K. Nichols says, while the captain of the Commander says it was the starboard bow of the El Paso that was struck.

The master of the Esther K. Nichols claims that the Commander and her tow were not in the position heretofore described, but were actually in motion below the bridge and were proceeding upstream, and not near enough to the Long Island side of the creek to avoid the contact; hence that, as there was

space to the port of the Commander which she and her tow could have occupied, she is at fault for not having given the Esther K. Nichols and her tow room enough to effect the starboard passing initiated by the two-blast signal from the Commander.

The testimony of the neutral witnesses, heretofore referred to, is convincing that, either by design or otherwise, the tug Commander and her tow El Paso were as close to the Long Island side of the creek as possible, i. e., the port bow of the El Paso was resting, as stated, upon the bridge abutment on the Long Island side.

Between the abutments, the water is 120 feet wide; of this, the Commander and her tow occupied about 55 to 60 feet, provided the El Paso was substantially parallel to the bank of the creek when she was struck. If her stern was pointing to the opposite shore, the passage open to the Esther K. Nichols and her barges would be reduced accordingly. The point of impact on the El Paso, as has been stated, is not agreed upon, but certainly the Esther K. Nichols and her first barge, 20 feet behind, passed clear, so that there was room for the entire length of the El Paso to enable the Esther K. Nichols and her tows to effect the starboard passing, or the Esther K. Nichols would have come into contact with the cattle float near the stern of the latter.

This leads to the conclusion that, if the Esther K. Nichols had started to her own port soon enough, she would have been able to bring her tow into straight line behind her, in time to avoid the striking which took place. Had her hawsers been shorter, she could have changed the course of her tow more promptly.

The delay in starting the starboard passing, on the part of the Esther K. Nichols, was the cause of the accident, and the libel against the Commander must be dismissed, with costs, and a decree taken against the Esther K. Nichols, in the usual form, for assessment of damages by a commissioner, with costs.